## MERRILL, *Executor, versus* SHAW & *al.*

A covenant by the vendee of certain bank shares, that he would indemnify and save harmless his vendor from any and all liabilities he may have incurred as *stockholder*, or from any loss or damage he may sustain from or on account of *that capacity*, is limited to such liabilities for damages as are recoverable *by law* of his vendor.

For costs incurred and for time employed by the vendor in defending a groundless suit, in consequence of having been such stockholder, no action can be maintained upon such *covenant.*

An individual stockholder has no authority to defend an action against the banking corporation, after the charter has been repealed and the effects have gone into the hands of receivers.

Where the plaintiff had sold to defendant certain *shares* in the Frankfort Bank, and took his covenant against loss or damage on account of having once owned them; and when the charter was repealed was appointed and acted

as one of the receivers of the bank, and in a suit *against* it after such appointment had *wrongfully* agreed to a judgment against the bank, upon which judgment his own property was taken in part satisfaction for having owned *such shares*; for all expenses by him incurred in obtaining a reversal of *such judgment*, and expenses and time in defending judicial proceedings growing out of such illegal judgment, he has no claim upon the covenants of his vendee.

On Report from *Nisi Prius*, Wells, J., presiding.
Covenant Broken.

The plaintiff's testator on April 24, 1840, sold and transferred to B. Shaw, one of defendants, eight shares of the Frankfort Bank at fifty per cent. of their original cost; Shaw also bought the shares owned by two other persons at the same time, and the defendants signed an agreement under seal "to indemnify and hold harmless all of them, or either of them, from any and all liabilities they may have incurred in their capacity as stockholders aforesaid, or from any loss or damage they may sustain from or on account of said capacity, except the depreciation of the stock aforesaid."

This suit was commenced on Sept. 4, 1848, upon the above agreement, and was tried at the Dec. term, 1850, and after the evidence was introduced, was agreed to be continued for the plaintiff to procure the reversal of a judgment against him in the C. C. of U. S., for the first district, and that the costs and trouble therein might be considered as embraced in this suit, and claimed as though they had accrued and been paid when this action was commenced; and upon the whole legal evidence the Court were to enter a nonsuit or default, according to the legal rights of the parties. No questions were involved by the pleadings.

In March, 1841, the charter of said Frankfort Bank was repealed, and afterwards the plaintiff's testator and one S. M. Pond appointed receivers of said bank.

On June 3, 1841, the Suffolk Bank commenced a suit against the Frankfort Bank for the bills of the bank which had previously, Nov. 5, 1839, been presented for payment and refused, and on that writ attached the real estate of

several who were or had been stockholders, for security, and among them the estate of plaintiff's testator for having owned the shares sold to defendant. There was some evidence tending to show, that defendant Shaw, was notified to defend this suit, and some against it. At the Dec. term, 1841, said testator agreed with the Suffolk Bank, that they might take judgment in their action for a sum agreed.

The execution issued on that judgment was satisfied in part upon the said testator's real estate.

In Sept. 1844, the Suffolk Bank commenced an action of ejectment in the C. C. of U. S., against the testator for the land levied on, and obtained a judgment thereon in May, 1848, and under a writ of possession took the control of the land. The defendant Shaw, was notified to defend this last suit, but declined.

At the Dec. term, 1849, the judgment in the action against the Frankfort Bank was reversed, on a writ of error sued out by the testator, because the bank charter had been repealed and the bank had no existence, both when that suit was instituted and when judgment was rendered.

In 1851, the judgment against the testator in the C. C. of U. S., was reversed, and a judgment for restoration to the testator of the land taken and costs recovered, rendered.

The plaintiff claimed to recover for counsel fees by him paid in obtaining the reversal of the judgment in the action of the Suffolk Bank v. the Frankfort Bank, and for counsel fees paid in the defence of the suit against him in C. C. U. S., by said bank, and for fees paid by him in obtaining a reversal of the latter judgment; and also for his time and trouble in attending upon and defending those suits.

Several questions were discussed by the counsel in argument, which the grounds of the opinion render unnecessary to be noticed.

*A. Merrill*, for plaintiff.

1. The defendant Shaw, was notified to defend the suit

against Frankfort Bank, but such notice was unnecessary. Chitty on Con. 753.

2. The charter of the bank had been repealed before the suit was commenced. There was no party to be sued, or to appear and defend. Not even a stockholder whose property had been attached, could defend. The suit was not against plaintiff; he was therefore not bound to defend. 23 Maine, 315; 26 Maine, 335.

3. The plaintiff was a receiver of the Frankfort Bank; it was his duty to agree upon the amount due the Suffolk. He only agreed not to defend the suit, which he had no right by law to do. If he had a right to defend it as stockholder, an equal right devolved upon defendant.

4. The statute of 1836, c. 554, made the stockholders liable for bills not redeemed. The Suffolk Bank had presented such bills, and it was mainly to provide against this liability that the bond was taken.

5. This bond is an indemnity covering even all expenses which might be incurred in defending suits which might be brought against the testator, in his "capacity" to recover bills, even though such suit might fail, and especially if it fail by mistaking the form of action. The suit failed for that reason. 23 Pick. 112 and 334. The failure in that action was not because there was not a legal claim, but of a mistake in the form. The defendant cannot complain of paying a less sum than he would otherwise be liable for.

*Hubbard,* for defendants.

The testator was the receiver of the bank, and his loss, (if any,) has been occasioned solely by not defending the suit against the Frankfort Bank, as he ought to have done, instead of consenting to a judgment. For such negligence the defendants are not responsible. Sugden on Vendors, vol. 2, pp. 509, 510 and 511; Comyn's Dig. vol. 3, pp. 100, 112 and 268; Cruise's Dig. title 32, c. 26, § 51, and note; 24 Maine, 56; *Ellis* v. *Welch,* 6 Mass. 246; 4 Mass. 349.

If a covenantee be disturbed by a man *without title,* his remedy is against the disturber, and not on his covenants.

The covenant is restricted to losses occasioned by those having the legal title.

If a condition be that a lessee shall enjoy quietly, and he be disturbed by one without title, it is not a breach of the condition, though the words express he shall enjoy without disturbance from any person.

If the plaintiff yields to an adverse title, the burden is on him to show it was permanent. 4 Mass. 349.

The plaintiff claims for counsel fees for resisting a claim which had no legal existence. He voluntarily yielded to a defective title. He can have no claim.

*Merrill* replied.

TENNEY, J. — On April 24, 1840, the plaintiff's testator transferred to the defendant Shaw, eight shares in the capital stock of the Frankfort Bank, and two others transferred to him five shares each, in the same. In consideration of these transfers, Shaw paid the sum of fifty dollars for each share, and he and the other defendant by their obligation covenanted with the testator and others named, "to indemnify and save harmless all of them, or either of them, from any and all liabilities they may have incurred in their capacity as stockholders aforesaid, or from any loss or damage they may sustain from or on account of the said capacity, except the depreciation of the stock aforesaid."

On Nov. 5, 1839, the Suffolk Bank presented at the banking-house of the Frankfort Bank an amount of bills of the latter, and duly demanded payment thereof, which was refused. The charter of the Frankfort Bank was annulled by an Act of the Legislature, passed on March 29, 1841, and the plaintiff's testator and another were appointed receivers with the power to close up the affairs of the bank.

On June 3, 1841, the Suffolk Bank instituted its suit against the Frankfort Bank for the recovery of the amount of bills, which had been presented, and the property of the plaintiff, of the defendants and others was attached in that process. The plaintiff's testator, as one of the receivers,

employed counsel in defence of that suit, and while it was pending gave directions to his counsel to enter into an agreement in behalf of the Frankfort Bank with the Suffolk Bank, that the former should be defaulted, and the latter should take judgment for the amount of the bills before demanded, and interest thereon at the rate of six per cent. This agreement was made, and upon the default, judgment was rendered accordingly at the Dec. term, 1842, in the county of Waldo. Execution was seasonably issued upon that judgment, which was extended upon the real estate of the testator, in part satisfaction thereof. At the Circuit Court of the United States, holden at Portland in October, 1848, judgment for the possession of this real estate was obtained in a suit in favor of the Suffolk Bank against the testator.

The present action was instituted September 4, 1848, and was continued till December term, 1850, in the county of Waldo, when it came on for trial. At the December term, 1849, in that county, the judgment in favor of the Suffolk Bank v. the Frankfort Bank, was reversed on a writ of error brought by the testator in his own name, on the ground, that the corporation against which it was rendered, had ceased to exist before the judgment was entered, and also before the action was brought.

After the report of this case was made up, upon a review of the action of the Suffolk Bank against the testator, in the Circuit Court, the judgment obtained therein was reversed at a term of that Court holden in September, 1851, and judgment rendered for a restoration of the real estate levied upon of the testator, and for the costs recovered by the Suffolk Bank, and the marshal's fees on the writ of possession, which had been paid by him, and interest on the whole, together with his costs, all of which have been paid by the Suffolk Bank.

In the report of the present case, "it is agreed by the original parties thereto, that this action shall stand continued a sufficient time for the plaintiff to make an effort to

procure a reversal of the judgment against him, in the Circuit Court, and the costs, expenses and trouble incurred by him in procuring such a reversal or a release of such judgment, may be claimed by him in this action in the same manner as if they had occurred before the bringing of this action, and had been declared on in the same."

The indemnity provided by the obligation of April 24, 1840, was 1st, from the liability of the testator, which had become fixed; and 2d, from that to which the plaintiff's testator was exposed, and both on account of his having held the stock, which he transferred to Shaw. Was this indemnity limited to the injury, which might be the legitimate result of the actual and legal liability, whether incurred at the date of the obligation or afterwards, or did it extend so as to embrace the expenses and the value of his time, in resisting claims arising from a supposed liability, when none of those claims had any legal foundation?

Some legal rules exist touching the construction to be put upon covenants and bonds with conditions, where the real intention of the parties thereto, may not be perfectly obvious; some of which will be noticed. "If a condition be, that the lessee shall enjoy, this shall not be extended to tortious acts; and therefore, if he be disturbed without title, it is not a breach of the condition." "So in covenant." Comyn's Digest, Condition, (E.)

"If a condition be to save harmless from all things contained in an indenture, he is not bound to indemnify from a collateral thing." "Nor from actions, in which he has a lawful defence, without the obligor." "If a covenant be to save harmless against a seizure, made by A, it extends to it, whether the seizure be tortious or not, but if a general covenant to save harmless, it extends not to tortious acts. Ibid, Covenant to indemnify, (I.)

"A covenant of warranty cannot be broken, but by an eviction or ouster of some title paramount to the grantor's." *Twombly* v. *Hewley*, 4 Mass. 441. "And to entitle a plaintiff to recover on a covenant of warranty, he must show an

actual eviction or ouster, by a paramount title." *Bearce* v. *Jackson, Adm'r,* 4 Mass. 408 ; *Prescott* v. *Trueman,* 4 Mass. 627. " If one consents to an unlawful ouster, he cannot afterwards be entitled to a remedy for such an ouster. But an ouster may be lawful; and there is no necessity for him to involve himself in a lawsuit, to defend himself against a title, which he is satisfied must ultimately prevail. But he consents at his own peril. If the title to which he has yielded be not good, he must abide the loss." *Hamilton* v. *Cutts,* 4 Mass. 349.

It was competent for the parties to the contract to covenant for an indemnity against all the expenses which the testator might incur, in any measures taken by him, to avoid damages and costs, whether the claims should be legally valid or otherwise. This is often done, in the bonds which sheriffs take of their deputies. And if the parties to this contract designed to make it thus broad, their intention must prevail in the construction. But this intention is not manifest from the contract itself.

We are to presume, that they took into consideration the exposure, under the laws of the State then in force, of stockholders in banks to pay from their private property, a sum equal to the amount of their shares, such as they had acquired in the bank, the affairs of which had become so deranged, that the plaintiff and others were willing to relinquish their stock on the receipt of fifty per cent. of the sum actually paid in; when large amounts of bills had been presented and payment thereof refused; and other similar demands and refusals to an uncertain extent were to be apprehended, if not highly probable. Such was the exposure of the plaintiff's testator, as the holder of his shares, at the time of the contract, and before its execution. He was by that contract to be saved harmless from the liability, which had become fixed, and from loss and damage, which might arise thereafter from or on account of his having been the holder of the shares, which he then transferred. It could not have been understood, that the contract amounted

Merrill *v.* Shaw.

to an insurance against the loss and damage which might arise in fruitless attempts in groundless proceedings against him, when his former capacity of a stockholder made him in no wise answerable for such claims. And the language employed will not admit of such a construction; it favors it to no greater degree, than the terms employed in the cases cited, where it was held, that no liability to pay such expenses existed. The manifest intention of the parties to the contract was, to secure the testator against those legal liabilities, which he had incurred, or the loss and damage which he might sustain, growing legitimately out of his capacity as a stockholder.

At the time of the institution of the suit in favor of the Suffolk Bank, the liability of the plaintiff's testator in that suit had ceased, as effectually as it would have done, under a valid written discharge of the officers of the bank itself; and at that time no loss had occurred, which could be the basis for a suit against the defendants. No other suit has been commenced against him, excepting that in the Circuit Court, which was brought and prosecuted, in order to make the levy upon his real estate available.

The claims, which are presented in argument by the plaintiff, are the sums paid to counsel for services in defending the suit in the Circuit Court; in the writ of error to reverse the judgment rendered on default in this Court; and the counsel fees in this suit, together with such sum, as the Court may deem reasonable for the personal care and trouble of the testator, in the same suits.

The action of the Suffolk Bank having had no foundation from its commencement, could have been successfully defended. The defendant Shaw, could not have legally appeared in defence, though he may have had full notice of the pendency of the suit. The plaintiff's testator was a stockholder also, but he had of course no greater right to appear as such, *Whitman* v. *Cox*, 26 Maine, 335, and it necessarily follows, that Shaw could not defend as his vouchee. And it would be unjust to the testator to suppose, that as a receiv-

Merrill *v.* Shaw.

er, he would allow the defendants to take the defence of the suit, on account of the private contract between them and himself, as a former holder of the shares transferred to .Shaw, regardless of the higher duty to the creditors, debtors and stockholders of the bank. The defence could have been made by the receivers alone, when their counsel by the authority of one, who instituted the present suit, agreed to a default and submitted to a judgment. A judgment so obtained and afterwards reversed, cannot now be treated as establishing the liability of the plaintiff's testator, when the judgment in the Circuit Court has also been reversed for want of a legal foundation, and the fruits of both have been restored. The expenses incurred in the processes adopted to cause the reversals of these judgments, as well as the defence of the suit in the Circuit Court in favor of the Suffolk Bank, not being on account of any liability of the testator, constitute no breach of the defendants' covenant. And the cause of action having failed on this account, the counsel fees in the same action cannot be obtained.

Whatever may have been the liability of the testator on account of the claim of the Suffolk Bank, if it had been presented to this Court on its chancery side, is not now before us, as no loss or damage can have accrued, on account of a liability, which has not been determined in such a suit, and which has not been yielded to without a suit. Neither can the plaintiff now substitute the loss, which his testator might have sustained in actions against him, and in which he might have been held liable, for the expense incurred in avoiding a judgment, in a suit, which was commenced and prosecuted, and ultimately failed.

Other questions were involved in the case, but their consideration has become unnecessary, for a final disposition of the action. *Plaintiff nonsuit.*

SHEPLEY, C. J., and HOWARD, APPLETON and HATHAWAY, J. J., concurred.